# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1210013272 |
| | ) | |
| | ) | |
| JEFFREY PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |

•

Submitted: February 13, 2019
Decided: March 11, 2019

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Andrew Vella, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Julianne E. Murray, Esquire, Law Offices of Murray, Phillips & Gay, Wilmington, Delaware, counsel to Jeffrey Phillips.

**MAYER,** Commissioner

1

This 11th day of March, 2019, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY[1]

On January 27, 2008, Christopher Palmer was shot and killed inside an after-hours nightclub. Herman Curry ("Curry") witnessed the murder. On July 8, 2012, Curry and Alexander Karmara were shot and killed during a soccer tournament at Eden Park in Wilmington, DE. Law enforcement believed that the nightclub shooting and the Eden Park incident were related. There were multiple eyewitnesses at the Eden Park event that identified both Otis Phillips and Jeffrey Phillips ("Defendant") as the shooters. In addition, one of the State's primary witnesses, Kelmar Allen ("Allen"), testified that Defendant was a member of the Sure Shots gang, had access to a handgun, and was a willing participant in the shootout at the park.

Defendant was indicted, along with Otis Phillips and fourteen other co-defendants, on numerous charges including two counts of Murder in the First Degree, Attempted Murder in the First Degree and gang participation relating to criminal activities of the Sure Shots street gang. A joint capital trial was conducted in October of 2014 resulting in Defendant's conviction of Murder in the First

---

[1] The facts set forth below are predominantly taken from the Delaware Supreme Court's decision affirming the underlying conviction. *See Phillips v. State*, 154 A.3d 1146 (Del. 2017).

Degree, Manslaughter (as a lesser included offense), Gang Participation, Conspiracy in the First Degree, Possession of a Firearm During the Commission of a Felony (four counts), Assault in the Second Degree, Reckless Endangering in the First Degree, and Disorderly Conduct. Defendant was acquitted of Assault Third Degree and Conspiracy in the Second Degree. Defendant was eventually sentenced to life imprisonment and an additional 72 years at Level 5 incarceration, followed by decreasing levels of supervision.

Defendant appealed and the Supreme Court affirmed the judgment of conviction on February 7, 2017. Defendant next filed a *pro se* Motion for Postconviction Relief on April 10, 2017, and counsel was appointed. Appointed counsel filed an Amended Motion for Postconviction Relief (the "Motion") with an Opening Brief and Appendix in support. The record was enlarged, an Affidavit of Kevin J. O'Connell ("Trial Counsel") in Response to Allegations of Ineffective Assistance of Counsel was submitted, the State filed a Response to the Motion, and Defendant filed a Reply.[2] In the Reply, Defendant presented a new claim for the Court's consideration. The Court ordered Trial Counsel to submit an addendum to his affidavit,[3] and the State filed a supplemental response[4] addressing that one new

---

[2] D.I. #s 193, 194.

[3] D.I. # 196.

[4] D.I. #s 197, 198.

3

issue. The record is now complete. After reviewing the briefs and record, I do not believe an evidentiary hearing is required to resolve this matter and the Motion should be denied.

## LEGAL CONCLUSION

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the Motion.[5] Defendant's Motion was filed within one year of the Supreme Court's mandate after appeal and is not barred as untimely.[6] However, other procedural bars may apply. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is barred, unless the movant can show cause for relief from the procedural default and prejudice from a violation of the movant's rights.[7] In addition, any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[8] Ineffective assistance of counsel claims

---

[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[6] Super. Ct. Crim. R. 61(i)(1).

[7] Super. Ct. Crim. R. 61(i)(3).

[8] Super. Ct. Crim. R. 61(i)(4).

cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[9]

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and the deficiencies in counsel's representation caused the defendant actual prejudice.[10] The court must be persuaded that the alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[11] Further, in order to prevail on an ineffective assistance of counsel claim, a defendant must show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[12] The test is not whether the Defendant can demonstrate that the error had some "conceivable effect" on the outcome but rather whether the error undermined the reliability of the result of the proceeding.[13] Defendant must overcome a strong

---

[9] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[10] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[11] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super., May 23, 2012).

[12] *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[13] *Strickland*, 466 U.S. at 693.

presumption that counsel's conduct was reasonably professional under the circumstances.[14]

Although Defendant couches his claims as ineffective assistance of counsel, as set forth below, his claims have already been substantively addressed by the Trial Court and the Supreme Court on appeal and should be barred as formerly adjudicated.[15] However, for purposes of completeness, I will address the allegations that Defendant's counsel provided ineffective assistance.

## I.    Defendant's First Claim for Relief

Defendant first argues that his constitutional rights were violated by Trial Counsel's failure to substantively communicate with him prior to trial. Although styled as an ineffective assistance of counsel claim, the argument is more accurately an attack on the timing by which the State provided Trial Counsel with information that was otherwise the subject of a protective order. Recognizing Trial Counsel "pushed hard for relief from the protective order" Defendant goes on to argue that the receipt of 1100 pages of transcribed witness statements, 10 days before trial,

---

[14] *State v. Wright*, 653 A.2d 288, 293-94 (citations omitted).

[15] Defendant does not argue that the court lacked jurisdiction, the existence of new evidence demonstrating he is actually innocent of the acts giving rise to the conviction, nor does he argue that a new rule of constitutional law applies to render his conviction invalid. As such, Defendant has not plead any of the exceptions to the procedural bar. *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

6

made it impossible for Trial Counsel to effectively work through this information with his client.

When Defendant argued on appeal that the Trial Court denied him the right to effectively prepare for trial by granting the State's protective orders, the Supreme Court disagreed. Rather, it recognized that "[p]rior to any witness testifying, Jeffrey and his counsel possessed, and had the opportunity to discuss, every witness statement."[16] The Supreme Court also held that the witness statements were disclosed "well in advance of trial, [and] their identities were revealed in advance of trial..."[17] It then concluded that the Trial Judge struck a proper balance between witness safety and Defendant's ability to prepare his defense.[18] Despite both the Trial Court and the Supreme Court having ruled on the matter, Defendant now argues he is not "attempting to take a bite at the same apple by bringing up the protective order again, ... Jeffrey argues that it is not the same apple." I disagree.

Regardless of the attempt to re-couch the argument, Defendant is attacking the existence of the protective order, the Trial Court's denial of his request for relief from the protective order, and the Supreme Court's affirmation of that ruling. The

---

[16] *Phillips*, 154 A.3d at 1155.

[17] *Id.* at 1156.

[18] *Id.*

fact that Defendant is now attempting to re-litigate the issue under the "guise of ineffective assistance of counsel" does not justify avoidance of the bar against reconsideration of matters that have been formerly adjudicated.[19]

Even if the Court were to now consider this as a claim of ineffective assistance of counsel, the argument fails.[20] Replete throughout the Motion is references to what Trial Counsel did do (rather than failed to do) to gain relief from the constraints imposed.[21] Effective representation by trial counsel requires "adequate investigation and pre-trial preparation."[22] Here, Trial Counsel first articulated his concerns to the Court during a pre-trial office conference. When relief was denied, Trial Counsel was faced with a daunting task, but his actions were objectively reasonable. Defendant fails to identify anything Trial Counsel could, or should, have done

---

[19] *Shelton v. State*, 744 A.2d 465, 485 (Del. 2000).

[20] *See, Lacombe v. State*, 2017 WL 2180545, at *3 (Del. May 17, 2017).

[21] This case is easily distinguishable from *Cronic* because Trial Counsel did not "entirely fail[] to subject the prosecution's case to meaningful adversarial testing." *Florida v. Nixon*, 543 U.S. 175, 190 citing *United States v. Cronic*, 466 U.S. 648 (1984); *Moody v. State*, No. 570, 2017 (Del. Sept. 24, 2018) (distinguishing *Cronic* when allegations are limited to counsel's failure to file a motion).

[22] *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997), citing *Riley v. State*, 545 A.2d 719, 727 (Del. 1990) (quoting *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir. 1984)).

differently, other than a vague reference that he could have requested more time.[23] Trial Counsel admits he could have sought more time, but also recognizes the justification for the protective order to ensure safety of the witnesses and fairness in the process. Trial Counsel also attests that the request for more time would have likely been denied. Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[24] Defendant has not met his burden of demonstrating error by Trial Counsel.

In addition, neither Trial Counsel, nor Defendant explain how the outcome of the trial would have been different if Trial Counsel had succeeded in obtaining additional time. In order to prevail on a claim of ineffective assistance of counsel, Defendant must establish actual prejudice by showing that had counsel not erred, there was a reasonable probability that the outcome or the result of the proceeding would have been different.[25] A defendant must make and substantiate concrete

---

[23] Of note, Trial Counsel obtained the transcribed statements in August of 2014. *See* D.I. #s 50, 54, 58, 60. Although he was not permitted to share them with his client until October, he had the statements for several months and was able to prepare during that time. Trial Counsel then had approximately 11 days before trial began to consult freely with his client regarding the statements. *See Phillips*, 154 A.3d at 1155.

[24] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super., Feb. 26, 2013).

[25] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996), quoting *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

9

allegations of actual prejudice.[26] Claims that are conclusory and unsubstantiated will not be addressed by the court.[27]

Defendant's claim of ineffective assistance of counsel fails because he cannot demonstrate that lack of preparation by Trial Counsel "caused the jury to reach a verdict it would not otherwise have reached."[28] Therefore, Defendant's first claim for relief is barred as formerly adjudicated, and to the extent it is phrased as a claim of ineffective assistance of counsel, Defendant has failed to establish either prong of the *Strickland* standard to justify relief.

## II. Defendant's Second Claim for Relief

Next, Defendant argues Trial Counsel was ineffective in failing to file a motion to sever based on (i) the likelihood that co-defendants would have antagonistic defenses; and (ii) prejudice due to the unrelated co-defendants sharing a last name.

### A. The antagonistic defenses

Again, Defendant recognizes he had not one, but two, "bites at the apple"

---

[26] *Dawson*, 673 A.2d at 1196, citing *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[27] *State v. Windsor*, 2015 WL 1455602, at *5 (Del. Super. Mar. 25, 2015), quoting *State v. Owens*, 2002 WL 234739, at *1 (Del. Super. Jan. 11, 2002)

[28] *Gattis v. State*, 697 A.2d 1174, 1186 (Del. 1997).

10

because (1) Trial Counsel submitted a Motion to Sever Based on Prejudicial Joinder; and (2) Trial Counsel moved for severance again after a witness testified because the co-defendants now intended to engage in different cross-examination strategies. Defendant argues that Trial Counsel was ineffective for acting "too late."

Trial Counsel admits that he did not anticipate the antagonistic defenses that came to light as the trial wore on. Here, the different defenses revolve around Defendant's desire to explore a witness's (Allen) protection agreement, and his co-defendant's inclination not to. Trial Counsel learned of the existence of the agreement on the second day of trial and was later given a copy of the agreement and an opportunity to cross-examine the witness both outside the presence of the jury and on the record.[29] After Allen began his testimony, Trial Counsel twice moved for a mistrial.[30] Although the requests were denied, a curative and limiting instruction were given to the jury. Immediately upon realizing the defendants held differing trial strategies with respect to cross-examination, both defendants moved for severance.[31] In denying the severance request, the Trial Court held that:

> neither of the Defendants' positions present separate defenses as to a State's witness's participation in witness protection, or otherwise, that the jury could only

---

[29]  *Phillips*, 154 A.3d at 1152, 1153.

[30]  *Id.* at 1153.

[31]  *Id.*

11

reasonably accept the core of it if it rejects the core of the defense offered by his co-defendant. Moreover, neither of the Defendants testified or presented evidence that directly implicated the other in their own defense.[32]

The Supreme Court agreed. When the issue of severance was presented on appeal, the Supreme Court held that Defendant failed to demonstrate sufficient unfair prejudice to mandate separate trials and the Trial Court did not abuse its discretion when it denied the request to sever the cases.[33]

Like the former argument, this claim is barred by Super. Ct. Crim. R. 61(i)(4) as formerly adjudicated. Assuming Defendant were able to evade this bar, he must demonstrate that Trial Counsel's actions were not objectively reasonable and that he was prejudiced as a result. I find that Trial Counsel acted as swiftly as possible after learning of the agreements, moved several times for a mistrial and severance, cross-examined the witness, and obtained curative and limiting instructions. It is difficult to identify what more, if anything, Trial Counsel could have done under the circumstances presented.[34] Therefore, Trial Counsel's actions were objectively reasonable.

---

[32] *Phillips*, 154 A.3d at 1156-1157.

[33] *Id* at 1157.

[34] The concurring opinion states that it is likely that defendants' counsel knew before trial – or at least by the time Allen said he was in witness protection – that the co-defendants would present incompatible defenses. Trial Counsel's Affidavit though lacked this confirmation and as indicated above, once he did learn of the issue, Trial

12

Further, although each defendants' counsel made some closing remarks implicating the other party, the existence of antagonistic defenses is not prejudicial *per se*, but rather, the trial court will consider the defenses as a factor when determining if severance is appropriate.[35] This was not a "close case" and there was overwhelming evidence that included several witnesses that tied Defendant to the homicides and gang activity.[36] Although hostility emerged as the trial proceeded, differing trial strategies does not justify severance. The Trial Judge's instruction to the jury that they should weigh the evidence and apply the evidence individually was sufficient.[37] In fact, the Supreme Court held that the comments made at closing were the "incidental type of prejudice that is expected with joint defendants and not the

---

Counsel immediately moved for severance and a mistrial. When reviewing such a claim, the Court must analyze counsel's conduct based upon all of the facts of the case and avoid peering through the lens of hindsight. *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994). "A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super., May 23, 2012) (holding defense counsel provided active and capable advocacy when evidence against Defendant was overwhelming) (citing *Harrington v. Richter*, 131 S.Ct. 770, 787-792 (2011)).

[35] *Nocks v. State*, 1993 WL 66564, at *1 (Del. Mar. 2, 1993), citing *Zafiro v. United States*, 113 S. Ct. 933, 938 (1993).

[36] *Phillips*, 154 A.3d. at 1154, 1161, 1163-1164.

[37] *See Phillips*, 154 A.3d at 1157.

substantial injustice required to find severance..."[38] And in light of the instructions to the jury, Defendant "failed to demonstrate a 'reasonable probability that substantial prejudice may result from a joint trial."[39] As such, Defendant has again failed to meet the dual prongs of *Strickland.*

### B.    Unrelated co-defendants with the same last name

Defendant's related argument, citing the concurring opinion, is that Trial Counsel erred in failing to move to sever because of the likelihood that the jury would be "confused" by the unrelated co-defendants sharing the same last name, especially where other members of the Sure Shots had that last name as well. Defendant argues that in a gang case, having the same last name, links the parties to the crimes. Trial Counsel believes Defendant could have been prejudiced if the jury believed they were related. Although Trial Counsel appears to concede this issue, Defendant must still establish that an actual error or omission occurred and resulting prejudice.[40]

All parties concede that the jury was informed twice that the co-defendants were unrelated. The State also explained that the Philips brothers came from Guyana and Defendant was from Jamaica. Defendant does not argue that the State suggested

---

[38]  *Id.*

[39]  *Id.*

[40]  *State v. Hamilton,* 1997 WL 1048191, at *4 (Del. Super. Dec. 18, 1997), citing *Wright v. State,* 513 A.2d 1310, 1315 (Del. 1986).

that Defendant was involved in crimes committed separately by his co-defendant. Nor was there anything identified in the record where the State implied that they were related. The jury was instructed to weigh the evidence and apply the law individually to render separate verdicts as to each defendant. Defendant's hypothetical arguments do not overwhelm the strong presumption that the jury followed the court's instructions.[41] When a jury is told to consider the evidence admitted against each defendant separately, and that it should not allow evidence against one defendant to be used in determining the guilt of the other defendant, the instructions are sufficient to eliminate the "potential 'spillover' effect from the joint trial."[42] And "[j]uries are presumed to follow the trial judge's instructions.'"[43] In this case, both the majority and the concurring opinion cite the jury's verdict as demonstrating that they adhered to the court's instructions, and as supporting the fairness of the trial, because the jury was able to distinguish between the evidence presented for the various charges and apply the law correctly.[44] In fact, Defendant was acquitted of certain charges, and on the question of whether the aggravating

---

[41]  *Revel v. State*, 956 A.2d 23, 27 (Del. 2008).

[42]  *Skinner v. State*, 575 A.2d at 1120.

[43]  *Phillips,* 154 A.3d at 1154, quoting *Revel.*

[44]  *See Phillips,* 154 A.3d at 1159, 1164.

circumstances outweighed the mitigating circumstances, the jury found two in the affirmative and 10 in the negative for Defendant. In contrast, the jury unanimously found that the aggravating factors outweighed the mitigating factors for Otis Phillips.

After reviewing the record before the Court, Defendant has not established that but for Trial Counsel's alleged error, the result of the proceedings would have been different. Although Defendant has cited possibilities, he has not prevailed in sufficiently undermining confidence in the outcome of the proceedings.[45]

## III.   Defendant's Third Claim for Relief

Finally, Defendant argues that Carl Rone tainted Defendant's case because the trial was dependent upon his expert testimony but he was later charged with certain criminal offenses.[46]

In May 2018, Carl Rone, the State's ballistic expert, was arrested and charged with providing false time sheets for work that was not performed during 2016 and

---

[45] *See Lacombe v. State*, 2017 WL 2180545, at *3 (Del. May 17, 2017) (internal citations omitted).

[46] Although not directly cited, presumably Defendant is requesting consideration of this issue either as an additional claim of ineffective assistance of counsel and/or pursuant to Rule 61(i)(3)(A)&(B). The "new evidence" exception does not apply because Defendant has not demonstrated that Rone's prosecution creates a strong inference that Defendant is actually innocent in fact of the underlying charges for which he was convicted.

2017.[47] The Motion argues these are new material facts that bear on the integrity and reliability of the conviction and should be examined to determine whether a new trial is warranted. Defendant urges the Court to explore Rone's conduct to determine whether, had the jury known of Rone's conduct, it would have assessed his testimony differently affecting the verdict.

The difficulty with Defendant's argument is that his trial took place in 2014 and Rone's alleged misconduct was suspected to have occurred in 2016 and 2017. Therefore, at the time of Defendant's trial, there was no evidence of wrongdoing by Rone from 2012-2014 (nor is there now) that would have lead Trial Counsel to take a different approach with cross-examination.[48] As such, Defendant's argument is more akin to saying, now that this new evidence has surfaced, Defendant should be given a new trial to investigate whether Rone committed any bad acts dating back to 2012 that would give Defendant a basis to discredit his testimony. But the purpose of a motion for postconviction relief is not to conduct a fishing expedition into the possible conduct of a witness. This Court cannot use Defendant's Motion to put

[47] Rone pled guilty to Theft by False Pretense and Falsifying Business Records in 2018. State's Reply at p. 2.

[48] *See also, State v. Pierce*, 2018 WL 4771787, at *4 (Del. Super. Oct. 1, 2018) (finding significant differences between the issues involving Rone's payroll records and allegations of false evidence and expert testing).

Rone on trial in this case simply to allow Defendant to explore activities the State of Delaware is already investigating.

Defendant concedes that with the information available at the time of trial, "Rone's credibility was vigorously challenged, based on the dubious scientific validity of his methodology and his lack of current credentials." Delaware has consistently cautioned that the courts should not second-guess counsel's conduct through the distorting effects of hindsight.[49] To the extent Defendant believes Trial Counsel should have done something differently, he is incorrect. Viewing the case from Trial Counsel's perspective at the time, he could not have predicted the issues with Rone's later prosecution and his conduct at the time fell within the wide range of reasonable professional assistance.

Defendant also relies heavily on *Fowler v. State*, 194 A.3d 16 (Del. 2018), to convince the Court to award a new trial. In *Fowler*, the State failed to provide the defense with the prior recorded statements of four (4) key witnesses. In its initial argument, the State believed Rone's ballistics evidence overcame any prejudice resulting from this failure. Later, when the investigation into Rone came to light, the State changed its position and argued the testimony of the four witnesses, tainted

---

[49] *See State v. Hamilton*, 1997 WL 1048191, at *4 (Del. Super. Dec. 18, 1997), citing *Strickland*, 466 U.S. at 689.

18

by the *Jencks*[50] violation, was sufficient for a conviction. The statements called into question one of the State's key pieces of evidence, *i.e.* the eyewitness testimony that Fowler was the shooter. The second key piece was the ballistics evidence that linked the same weapon to the two shootings that made evidence of Fowler's guilt in each incident "mutually reinforcing."[51] In other words, by accepting Rone's testimony, the jury had a basis, other than eyewitness testimony, to conclude that Fowler was the shooter. On appeal, the Supreme Court held that both the *Jencks* violations and Rone's credibility must be considered in relation to each other and ultimately decided that the relationship of the compromised ballistics evidence to the eyewitness testimony affected by the *Jencks* violations was too much to disregard the issues as harmless.[52] In *Fowler*, the statements were considered material to the defense and the Supreme Court granted the request for a new trial because both of the State's strands of evidence were materially compromised and one could not overcome the weaknesses of the other.

Defendant's case does not suffer from the same misstep as Fowler's. Here, Defendant has not demonstrated that any error occurred *in addition to* the possible

---

[50] *See Jencks v. United States*, 353 U.S. 657 (1957), *Hooks v. State*, 416 A.2d 189, 200 (Del. 1980), Super. Ct. Crim. R. 26.2.

[51] *Fowler*, 194 A.3d at 22.

[52] *Id.* at 23.

19

attack on the credibility of Rone. To accept Defendant's view of *Fowler* would be to say that every case in which Rone testified now requires a new trial. *Fowler* does not take the matter to that extreme. Rather, *State v. Romeo*, 2019 WL 918578 (Del. Super. Feb. 21, 2019) provides guidance here. In *Romeo*, this Court held that Romeo's conviction did not turn on Rone's testimony, the shooting was witnessed by several people who provided statements and testified at trial, and the jury had sufficient uncontroverted evidence to support the conviction.[53] Similarly, Defendant faced multiple eyewitnesses who testified at trial. At least two witnesses identified Defendant as one of the shooters and involved in the melee, and Defendant was soon apprehended nearby and taken into custody. Rone's ballistics evidence was not used to establish identity of the shooters, rather the eyewitnesses provided that critical evidence, and Defendant has not presented any credibility issues of these witnesses. The Supreme Court commented no less than six (6) times that this was not a "close case" and the evidence against Defendant was "overwhelming."[54] Defendant having not sufficiently established a basis to discredit the remaining evidence presented at trial, he has likewise not met his burden to justify the requested relief.

---

[53] *Id.* at 29.

[54] *Phillips*, 154 A.3d at 1154, 1161, 1163, 1164, 1166.

20

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer

oc:    Prothonotary
Andrew Vella, Esquire
Julianne E. Murray, Esquire